DAVID N. DAVIS *v.* JOHN A. GWYNNE AND OTHERS.

Defendants were stock brokers, carrying certain stock for plaintiff, who, on September 12th, 1867, wrote to them, directing that in case the stock should look like reaction or weaken, or have a downward look, they should sell for him 50 or 100 shares, as the case might look. On September 14th, the defendants replied that they thought the market would recover from its present depression. On September 17th, the plaintiff ordered the defendants to purchase 100 shares, if the stock looked like rising. On the 18th, the defendants bought for the plaintiff 50 shares, and on the 20th, the market falling rapidly, they sold all the plaintiff's stock, without notice to him. *Held,* that the direction contained in the plaintiff's letter of the 12th was not revoked by what subsequently took place, and the defendants were justified in selling upon the fall in the market.

APPEAL by plaintiff from a judgment of this court, entered upon the direction of a judge at trial term, dismissing the complaint.

*William Stanly,* for appellant.

*John E. Burrill,* for respondents.

, Davis v. Gwynne.

By the Court.*—Joseph F. Daly, J.—The defendants, who were brokers in this city, acting as agents for the plaintiff in buying and selling stocks, had in their possession as such agents and brokers, on September 20th, 1867, one hundred shares of the capital stock of the Chicago & North Western R. R. Co., which they had purchased by order of the plaintiff. On that day they sold all the 100 shares, leaving in their hands, to the credit of the plaintiff, $17 20 of the margins originally deposited by him with them. The plaintiff claims that such sale was unauthorized, and made without notice of the time and place of sale. If such sale were unauthorized, the plaintiff would be entitled to a verdict upon the authority of *Markham* v. *Jaudon* (41 N. Y. 235). In any event, he was entitled to a verdict for $17 20 and interest from the commencement of the action, January 31st, 1870.

The defendants rely upon letters of the plaintiff as their authority for the sale. The correspondence is as follows:

On September 12th, 1867, the plaintiff wrote to defendants that, should North West look like reaction or weaken, or have a downward look, to sell him fifty or one hundred shares, as the case may look. (The defendants then held but fifty shares for him.)

On September 14th, 1867, the defendants replied that they thought the market would recover from present depression.

About September 17th (that day or before), the plaintiff ordered defendants to purchase one hundred shares, if the stock looked like rising.

On September 17th, defendants replied that they did not buy the one hundred shares, as they were then carrying fifty shares for plaintiff's account, and if they bought one hundred more, they would only have three *per cent.* margin on the one hundred and fifty shares, which they thought rather small, as plaintiff did not say anything about sending them more; also, that if he sent them more margin, they thought the stock good to buy; that North West was then 43⅞, and Preferred, 69.

* Present, Larremore and J. F. Daly, JJ.

On September 18th, 1867, defendants telegraphed to plaintiff that they had bought fifty common, at 43½.

On September 20th, 1867, defendants telegraphed to plaintiff that they had sold one hundred common, at 39¼; and wrote to plaintiff on the same day that they had sold for his account and risk one hundred North West, at 39¼, to Hale & Burr, payable and deliverable that day.

On September 20th, 1867, plaintiff wrote to defendants that he had been sick, and just able to be out; and as they had the discretion to sell, he supposed they would, before it got as low as it was, and that he would send them some money in a few days, if they would hold on.

On September. 30th, 1867, defendants mailed to plaintiff an account, showing the sale of the one hundred shares on the 20th, and the balance to his credit of $17 20. ·

On October 16th, plaintiff wrote to defendants that the statement was entirely unsatisfactory, and that he would hold them for the amount of his margin previous to their purchase of the last fifty shares. To this defendants made no reply.

On November 21st, plaintiff wrote to defendants that they bought for him, on September 12th, fifty shares North West, at 47⅛, and now they might sell it. Defendants made no reply.

It was admitted that on October 17th, 1868, the stock was worth $95 50 per share.

My opinion is that the letter of September 12th, 1867, from plaintiff to defendant, to sell 50 or 100 shares, if the stock looked like reaction, or weakened, or had a downward tendency, was an .authority to sell in the event named, and subsisted until countermanded or revoked by implication; that the letter of September 14th, from defendants, was an expression of their opinion that the market would recover from its depression; that plaintiff's order of the 17th (or before) to buy 100 shares was an indication of his confidence in the market from that expression of opinion, but did not revoke his orders to sell if the stock looked like reaction, or weakened, or had a downward tendency, but was an approval of defendants' holding the stock to that time; that the market falling rapidly up to the 20th, justified defendants' acting under the standing order to sell, and

that they performed their duty to plaintiff by selling on the 20th; and that the plaintiff's letter of the 20th, stating that " as you had discretion to sell, I supposed you would have sold before it got as low as it is," was a recognition and confirmation of the authority to sell as a standing authority in case the stock weakened or had a downward look.   The latter part of plaintiff's letter of the 20th, that he would send some money in a few days if they held on, was either prompted by the idea that they had not actually sold (for which he had no grounds), or by the supposition that he was in their debt by the fall in the stock, but in either case is immaterial.   The letter of plaintiff, of October 16th, 1867, demanding credit for his margin as it stood before the purchase of the last 50, was too late as a repudiation of that purchase, which he had notice of on September 18th, and which he did not repudiate on the notice of the sale of 100 shares on the 20th, he having ordered to be purchased with 100 shares on or about the 17th.   If the defendants bought 50 instead of 100 under the order of the 17th, it is the plaintiff's gain as the sequel proved.   However, it is enough to say of it that the complaint recognizes those 50 as having been properly bought for him, and the suit was brought to recover damages for their being improperly sold, together with the 50 shares held on the 12th.   The objection, that they were bought without authority, could not be taken at the trial in the face of the complaint as it stood.

It is not unlikely that if the defendants had not sold when they did, the plaintiff would have claimed damages for any loss arising from a depression after the 20th of September (had the market not recovered), and pointed to his letter of the 12th of September, as a positive order to sell in the contingencies named in it.   I so regard it, and think defendants acted as they were bound to act under such orders and on a falling market.

There was nothing to submit to the jury, no conflict of evidence, no inference or deduction from facts.   The only question—that of authority to sell—was one of law upon undisputed facts.   But the plaintiff did not ask the court to submit it to the jury, to draw any inferences or conclusions from the facts, as he might have done.   His exception to the dismissal of the

complaint only brings up the question, whether, on the conclusions of the court on the undisputed facts, the plaintiff had failed to make out his case (*Dows* v. *Rush*, 28 Barb. 180; *Mallory* v. *Tioga Co.* 3 Keyes, 356; *Barnes* v. *Perine*, 12 N. Y. 23; *Winchell* v. *Hicks*, 18 Id. 558). I think he had.

The question objected to, as to whether defendants had sold the 50 or 100 referred to in plaintiff's letter of the 12th of September, 1867, was improper, because there was evidence of only one sale after that date, viz., of September 20th, 1867, of 100 shares, and no other sale, and there was no evidence that defendants, on the 12th of September, or afterwards, held any stock for plaintiff, except what they sold on the 20th. The exception, in folio 55, is not argued on the appellant's points, and is not tenable, for the reasons stated in the court below, in sustaining the objection.

The plaintiff is entitled to $17 20 and interest, which should be credited upon defendant's judgment for costs, and the judgment for the balance should be affirmed (Code, § 330; *Chouteau* v. *Suydam*, 21 N. Y. 185; *Brownell* v. *Winnie*, 29 N. Y. 400).

No costs of this appeal should be allowed, as neither party has entirely prevailed upon it.

Judgment accordingly.